Good morning, Your Honors. May it please the Court, Charles Cooper, representing Appellants 14, Judges of the Harris County Criminal Courts at Law. I'm joined this morning, we'll divide argument with my colleague Kate David, who will address a couple of issues, whether the county is a proper party in this proceeding, and whether 1983 relief is available against judges in connection with their official actions. The merits argument advanced by the plaintiffs in this case has evolved over the course of the appeal, and as they have admitted, has significantly narrowed, and I think it's fair to say that you have two differing approaches before you on the merits. But we submit that at the threshold, the court is bound to decline to reach the merits for two independent reasons. The first reason is that the court needs to abstain from exercising jurisdiction, and we believe that's required under two controlling cases. The first one is a Supreme Court case, and it is remarkable in its similarity to this case, O'Shea v. Littleton. The Supreme Court addressed a 1983 claim brought on behalf of a class of, I'm quoting now, financially poor persons who are unable to afford bail, and they challenged a continuing pattern in practice by Illinois County magistrates and judges of, and I'm again quoting, setting bond in criminal cases according to an unofficial bond schedule without regard to the facts of a case or circumstances of an individual defendant in violation of the Eighth and Fourteenth Amendment. The court held, the Supreme Court held that the case was barred under Younger because, as the court put it, the plaintiffs sought an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal proceedings. It seems to me that you have a problem of a continual violation, as the court found, of the Eighth and Fourteenth Amendment, as you said. Is a Federal court powerless to remedy something that the County and State apparently are not remedying? Let's spot them all the other arguments about facts and so forth and just address that. I know you may disagree with the way I just stated that, but that's what the district court found. I mean, is the court powerless, the Federal court powerless? Is that your contention? Our contention is that the court is required to abstain from exercising its jurisdiction under Younger. And beyond that, the place where the Federal courts have their power is in habeas corpus. And that, we believe, this 1983 action is barred under Prizer. And I'll come to that, if I may, Your Honor. You would just simply never get to the Federal courts on habeas in a case like this, because by the time you got through the State process and so on, I mean, basically, the time you'd spend as a misdemeanor convict would be done. I mean, we have habeas cases that, from start to finish, last forever. So how can that really be a remedy? Well, Your Honor, actually, in the context of abstention, I would disagree with the court's concern about habeas inevitably taking too long. First of all, if that proposition were dispositive, then the O'Shea case and the Tartar case, the second controlling case, we believe under Younger, Younger abstention, could not have come out the way they did. But in this context, and the requirement for both Younger and, that is, O'Shea and Tartar on the one hand, and Prizer on the other, is that there be an opportunity to present these issues in State court first. The whole point of this is comity, so that the Federal court basically stays its hand and lets the State court address these types of constitutional issues initially. And, Your Honor, that opportunity exists in the State court system at two different times. First, in the next business day hearing before a county judge, these very same constitutional arguments could have been brought by any of the named plaintiffs here, could have been brought on behalf, for that matter, of the plaintiffs. I thought they were only given less than a minute and were told not to talk. Your Honor, that's the hearing officer hearing. That takes place within 24 hours, Your Honor. It's a probable cause and bail setting. It's the informal procedure that was mandated by the Supreme Court in Gerstein, not adversarial, not counseled, but clearly consistent with Gerstein, both in terms of its dealing with the issue of probable cause and in terms of its dealing with the question of bail, we would submit, consistent with the procedural requirements of due process. But my key point here is that after that initial appearance where bail is initially set and probable cause determined and, therefore, the ability of the State to detain pending trial is determined on the basis of probable cause, the next business day, the county judges hold a mandatory hearing that is adversarial, that is counseled, and where counsel could make all of these arguments. And that takes place, essentially, within 48 hours. Now, to be sure, when it's over the weekend, it can't happen that quickly. But there's no — there's certainly no reason why it has to happen that quickly. My point is there's an opportunity then and there to present these same constitutional issues and, Your Honor, there's an opportunity if the plaintiff doesn't like the answer to the — initially given by the county judge, to then and there file a habeas corpus petition and — At what point do they actually receive counsel in this whole timeline that you gave us? Because we're talking about people, by definition, who lack funds, so they can't go hire a counsel themselves. Often, but not always, a desperate lack of funds is also equal to a lack of knowledge of the legal system, education, et cetera. Not always, but that certainly can happen. So when is it that they get counsel to where they could then know about this timeline and start employing all this? Let me tell you in two different phases here. In connection with all periods relevant to the filing of the complaint and the litigation, they didn't get counsel until the next business day hearing before a county judge. Now, the county, the county judges have modified their rules so that the initial appearance before the hearing officer, Judge Prado, is counseled. But that's what happens now. But it's always been the case that in the next business day hearing, indigent defendants were provided with counsel. At that moment or just kind of like we're going to — it's going to happen? I got the impression it didn't happen right there. No, Your Honor. I think I can represent to you that — They are getting it. And that counsel is authorized to then do the habeas, do all of that, and there's no restrictions on that? None at all. And, in fact, I want to call your attention, Your Honor, to a case we have cited in our paper called N. Ray Shiras, S-H-I-R-A-S. And it indicates, we would submit, just how quickly the habeas process can be undertaken in the state system. There, it was a revocation bond proceeding, and the defendant sought to challenge the constitutionality of the state statutes that required revocation. On the day that bond was revoked, and there was a hearing for that, on the day that bond was revoked, and the defendant was taken back into custody, the defendants' counsel immediately filed a habeas corpus petition. And two weeks later, the case in that habeas corpus petition was denied by the county judge. The constitutional argument was rejected. Two weeks later, the case was submitted to the Texas Court of Appeals. That's N. Ray Shiras. So, Your Honor. Well, your opponent, if they could jump up right now, would say, well, yeah, but by that two weeks, that's kind of the time served. Everybody pleads guilty to falsely to get out. So that, again, that's fast in a felony case and all of that. But in a misdemeanor case where the likelihood is that your sentence is not going to even be two weeks, how meaningful is that procedure? Your Honor, if the defendant moots out his own case by, you know, either by pleading guilty, that's not something, I think, that impacts the younger analysis. But under Texas state law, the detained misdemeanor defendant cannot be detained longer than 30 days. So your point is a fair one in terms of that 30-day period. But my point to you, Your Honor, is this. The precedents require that the opportunity to advance this constitutional argument be available and that that opportunity be genuine. And we would submit to you it is genuine. There's two different opportunities. The first one in the next business day hearing before a judge authorized to hear constitutional arguments and in a habeas proceeding immediately thereupon with full rights of appeal to the Texas Courts of Appeals. And again, this point would have foreclosed the resolution, the dismissal under O'Shea and the case in Tartar. O'Shea went beyond just bail issues, though. Didn't it deal with sentencing, which does affect a criminal case? Bail doesn't quite affect your guilt, innocence or punishment. So isn't our case here is just dealing with the right to be released on bail? But O'Shea seemed to go into other issues that do affect the criminal case. Do you see a distinction there between our situation and O'Shea? I would believe that there's a distinction, but I believe that the Court understood that distinction and separately addressed the proposition about dealing with bail. The Court was, in O'Shea, was very clear that in those bail proceedings, that equitable relief that was requested there, dealing with the claim of systematic imposition of excessive bail, when it would inevitably lead the Court into oversight, what the O'Shea Court called a continuing audit of those state bail proceedings. And in fact, the Court thought that the – it basically dismissed the Seventh Circuit's proposition disavowing an intention or an expectation that there would be continuing involvement by saying even a – the periodic reporting requirement that was contemplated would be antithetical, the Court said, to the principles of comity that were at work in the – in connection with the Younger Doctrine. Are you – you were saying that habeas is available and we're – the allegation is that the class action that the administrative process used by the Harris County is contrary to the State law. But if you're saying that they should file habeas, you have hundreds of misdemeanor arrests, I would guess. Are you suggesting instead of one class action that solves this allegation of improper administrative issue, that you have each individual defendant file a habeas and you have hundreds of habeas corpus petitions hitting the county courts, that each individual defendant file his own personal habeas corpus action instead of one class action that sort of tries to fix the problem if there is a problem? Your Honor, once the Texas courts have had the chance that Younger accords to them to address their laws against the very constitutional arguments that the plaintiffs would advance, once they've had a chance to do that, well, then that – the law at least in Texas with full rights to file a cert petition to the Supreme Court at least in Texas will have been established. And so I don't think that the course that I am suggesting is ordained by O'Shea and until the issues were resolved, they would not be resolved and there would be litigation, no question about it, in the State courts. Is there a concern that Judge Rosenthal didn't let the State have a first bite at the apple? Is that the – I mean, I understand that's what abstention mirrors, but you're saying the bite should have been the habeas proceeding and then ultimately you can have a Federal habeas off of that, although Federal habeas, as you know, is very circumscribed in terms of reviewing State court decisions and would be mooted in every case, I would think. By the time you got to Federal court and all of that, the entire sentence you could serve as a misdemeanor defendant would be over, I would think. If everybody worked really fast, it would be close. Well, Your Honor, and our submission is that the opportunity available to the habeas petitioner, to the misdemeanor defendant in State courts to advance these very same arguments is all that Younger requires and that under these precedents, that's – the State of Texas affords that opportunity. Let me ask you something, Dewey. In the briefing and in the trial court, there was a lot of talk about, well, in July this is going to happen and in July that's going to happen and there's all this stuff floating around and now July is in the past, that July anyway. Has something changed? Is there new evidence? Would there be any value to sending any – and the injunction has been in effect for a while. Would there be any value in sending it back for review of the brave new world? Your Honor, there have been a number of changes that have been taking place. Harris County was examining the bail system before this litigation got underway. It was studying reforms. The community was debating the issue, as were the defendants before you. And changes were in the offing and changes have been made. For example, the – I mentioned earlier that the hearing before – the hearing officers, the initial 24-hour probable cause bail setting hearing, that is counseled now. Within the 24 hours? Yes, Your Honor. The next business day hearing, which has always been counseled, is one in which the county judges now take up the question affirmatively of the bail setting. They review it unless the defendant has affirmatively waived it. And so bail is, again, at the next business day hearing before the county judges, that is on the table. It has always been the case that bail could be contested and challenged at that hearing. Now it's taken up mandatorily unless it's waived. But if everybody just sits up a little bit straighter when they do the rubber stamp, does that really help anything? I mean, now they know they're kind of under scrutiny, so maybe they sit up and maybe they add an extra sentence to their rubber stamp. But has anything fundamentally changed from the evidence found by Judge Rosenthal? Your Honor, I want to address that. I appreciate you mentioning that. We earnestly submit that the key factual predicate of the plaintiff's kind of new and narrower argument, which is that there are no individualized considerations given to the defendant's circumstances, we believe that is simply clearly erroneous. We say that with all due respect, believe me, to the court, to the district court. But we believe the district court erred, and clearly so on that point, for several different reasons. One of the most prominent reasons is this. Before the hearing, the 24-hour hearing before the hearing officers where bail is initially set takes place, pretrial services has a lengthy interview or an interview gathering information from each defendant. That information is provided, and it deals with their financial circumstances, their family ties, their residence, their time and place, all of the criminal record, previous no-shows, all of that information, and that is provided to the hearing officers before the hearing. A written report? Yes, Your Honor. A written report is quite lengthy, actually. And that report is examined by the hearing officer during the hearing. That information is available. There are individualized considerations given to each one of the defendants. The other point, Your Honor, is that 20 percent, according to the record before you or so, of the people who are before the hearing officers are ultimately granted a personal bond, either by the hearing officer or by the county judge in the next business day hearing. And I see that my initial time allotment has expired. I haven't had a chance to address the merits at all. I guess the one point I would. Well, you have six minutes for rebuttal. Yes, Your Honor, and I'll take that six minutes. Thank you very much. May it please the Court, Kate David for Harris County, the hearing officers, and Judge Fields. This is the very first court to ever hold that a bail setting policy, a policy setting bail, is a county policy. This court in Boston v. Lafayette County said that this circuit has uniformly rejected attempts to hold local governments liable for constitutional deprivations caused by local judges' interpretation and implementation of state law. Judge Rosenthal says in her order that what she's upset about is the way judicial officers in Harris County, quote, interpret and apply Texas law in setting bails. I believe that that applies. The Davis case is very helpful here. The Davis case talks about standardized countywide procedures for court appointments, similar to the standardized county procedures here for setting bail. The Davis case instructs us to look at the nature of what the judge is, of what's happening, and whether that's a judicial function. And I would argue that setting bail is absolutely a judicial function. What about passing local rules? The statute lets them do that, they've done that, and there is criticism of that. Why isn't that a county policy? So I think it depends on which local rules you're talking about. And the local rules that are targeted here are both the written and unwritten, also, customs modifying those local rules that deal with bail setting policies. And so to the extent those local rules kind of set the framework or the guidelines for setting bail, we're talking about the same thing a judge is doing in an individual case, and under Davis, that would be a judicial function. That's also consistent with Johnson v. Moore and Hamill v. Wright, which held that a county can exercise no authority over state court judges as the latter are not county officials. That was talking about district court judges. Here we're talking about county court judges, but they are both judges that are part of the state of Texas judiciary. And thus that authority applies. But they are county court judges. I mean, I lived in this system. I was a state district court judge in Texas. So I would say there was a difference. For one thing, the county court judges are paid by the county, the district court judges by the state with a county supplement, et cetera. I don't know if that makes much difference. But why can't they be county policymakers? They're elected judges, they're county court judges. Why can't they be policymakers on rules? So they could be to the extent they're administrative, but here we don't even get there because they're judicial rules because you're talking about how a bill is set, which is a judicial function. You're not talking about like in Virginia, for example, something regulatory where the judges are saying this is regulations for the state bar. All rules judges set would be judicial. I mean, unless you're talking about employment rules or we'll hire clerks that have this or that. But if that's the only rule that's accepted, then that means that all procedural rules are judicial in your view. No, I wouldn't necessarily say that, but I would say something like you have here where it's a bail schedule that provides a framework and says if this is the offense, this is kind of the guidelines you're within, that's a function that typically the judge would start anew. In fact, that was the reason that Roberson ordered the bail schedule was to ensure consistency in those decisions and provides a framework so their first few steps are done for them and then they apply judicial discretion. So the Sentencing Commission of the United States is performing a judicial function when they come up with guidelines? No. I think it depends on what the guidelines are. I mean, if it's guidelines that are just about, you know, what time the courthouse opens. I'm sorry, sentencing guidelines. Right. If it's talking about things like when the courthouse opens or, you know, how the courthouse runs, absolutely not. But if you're talking about something as essential to the criminal justice process as the setting of bail, absolutely that's a difference. And I think it's helpful there if you look at Woods from the Seventh Circuit because the laws there are very similar and also Egger out of the Ninth Circuit, which this Court has relied on a lot in the court appointment cases, which says when deciding how or whether to advise the restees of their rights, that's a judicial function. Even if this function is performed in a way that makes a mockery of those rights and even if the judge fails to follow state law or federal constitutional law, that does not make the duty administrative. And here you're talking about how one of the things the judge is complaining about is how these procedures are done and how they're set. And under Egger, I would say that's judicial. I think my time's up unless you have any other questions. Good morning, and may it please the Court. Alec Karakatsanis with the Plaintiff Appellees. I'll be addressing the arguments made by the 14 judges. My colleague, Daniel Volchok, will be addressing the arguments made by the county. Before I go any further, I want unequivocally to address some of the timing issues that Judge Haynes asked about on the opening examination. It's very important that we understand exactly what's going on in this process because the timing questions are critical. Everyone in this appeal agrees that there is absolutely no opportunity for someone to raise any of the issues that they raise here until what is being called before this Court the next business day setting. It's important that you understand that that is the next business day after the 24-hour hearing. Mr. Coker says they get a lawyer for the initial hearing. There is a pilot program that was supposedly started in July where a lawyer is going to be appointed at the 24-hour hearing. But keep in mind, that doesn't change any of the concessions that were made below about what happens at that hearing. The hearing officers are still not allowed to hear evidence. They're not allowed to make factual findings, let alone by any legal standard. Counsel appointed? We don't have anything. We don't know what's been going on. There's nothing in the record of what's going on. All we have is Judge Rosenthal's finding that should such counsel be appointed based on the testimony of defendants themselves, nothing would meaningfully change that hearing because those hearing officers are actually not permitted to make the factual findings that are required and they're not permitted to hear evidence because there's not courts of record. On the timing question, though, what's absolutely critical to understand is that 20% of arrestees wait longer than 24 hours, contrary to Texas law, for that 24-hour hearing. Then, the next business day hearing is, obviously, if the 24-hour hearing happens, say you're arrested on a Thursday, the earliest you're going to have your 24-hour hearing is on a Friday. The earliest you can then be seen for what's being called the next business day setting, which is arraignment, is the following Monday. So the district court made robust factual findings on this question. We know from the evidence that over the time period the district court analyzed, 7,000 people waited 96 hours or more for that, quote-unquote, next business day hearing. 13,000 people waited 72 hours or more. And 26,000 people waited longer than 48 hours for that hearing. What's the timeframe for that study? How many years does that take? It's the two years preceding the district court's order, so January 2015 through January of 2017. Then, I think this is a really critical point that I don't think was accurately stated to the court on the opening presentation, which is the district court held as a matter of fact that for years, up until the filing of this case, and then for many months after this case until the evidentiary hearing was held, at that next business day hearing, people were not even permitted into the courtroom from the holding cell, let alone to make the arguments they wanted to make, unless they agreed to plead guilty. That is not an adequate opportunity to raise the issues that they want to raise in this case. They weren't even allowed into the courtroom. And then the district court made another critical factual finding, which is... Now, are you talking about between before the hearing officer or before the judge? No, before the actual judge. They were kept in a holding cell in the Harris. So the hearing officer hearing happens on video. You stand in the little red square. You're not permitted. You're ordered, in fact, by sheriff's deputies not to speak. The next business day hearing, which is being called an adequate opportunity in their briefs, just ignores the district court's factual finding that they weren't even brought into the courtroom at the next business day hearing unless they agreed to plead guilty. Now Mr. Cooper says they get a lawyer for both hearings. Is that not true? I don't know what's happening right now. Mr. Cooper is saying things that aren't in the record, and that's certainly not the interlocutory order that's being appealed. What we do... I mean, obviously any interlocutory appeal in a preliminary injunction context, the whole point of a preliminary injunction is to protect against rights so that the case may be litigated. But nothing about new facts later, to the extent they exist, would undermine the district court's order that's being appealed. And in fact, the answer is Judge Rosenthal already made a factual finding based on the testimony of defendant judges themselves who said, first, the new rule supposedly just codifies prior practice, right? So that's one point. All it does is codifies prior practice. And she found what the prior practice was. And secondly, based on the testimony of one of the judges, she made a factual finding that nothing would change because in internal e-mails, the judges had said to each other that they fully intended not to bring people into the courtroom because Texas law doesn't require this supposed next business day setting. And that was the testimony of Judge Jordan below. And Judge Rosenthal made a factual finding crediting Judge Jordan's testimony and finding, as a matter of fact, that even if they purported to pass a new rule a couple of months before the hearing, nothing had changed, certainly by the time of the hearing in the couple of months since they passed that new rule. And she made a factual finding that based on their own internal communications in the testimony of Judge Jordan, that it wasn't likely that this would change. And that's really critical for Younger for one more reason in response to your... Let me ask you this because here's the problem that I see is it looks like the judge attempting to solve the problem of the county court judges failing to exercise discretion and act as judges but instead rubber stamping and just wholesale doing one thing has flipped it to taking away all discretion and making them wholesale do the opposite. And is that really the right solution? The thing is we want judges to act like judges and exercise discretion and then the federal courts would stay out of it. But Judge Rosenthal found that they really weren't doing that. But she solved that by saying now you have to do it all this way and it's 24 hours, et cetera. I think that's a very important point to understand which has been conflated in some of the briefing. There's a question about the constitutional theory and there's a question about the scope of the relief. So Judge Rosenthal agreed with our narrow theory that in order to detain someone prior to trial to issue a de facto order of pre-trial detention you must provide certain safeguards and make certain substantive findings pursuant to certain legal standards. It's a very simple point. But then Judge Rosenthal, and this is as experienced as a district court judge gets, she heard all of the evidence. She made that conclusion, which I think is unassailable as a matter of federal constitutional law. And then she was told something very important. They told her we cannot comply with the procedural and findings requirements because at the 24-hour hearing officer stage they're not allowed to make findings or hear evidence. So here's Judge Rosenthal. Put yourself in her position. She's just concluded that in order to issue a de facto order of pre-trial detention judges have to engage in certain inquiries and make certain findings. And then she was told, by the way, we cannot do that. So then it comes a question of a district court judge who, by the way, is being told by the Harris County district attorney and the Harris County sheriff that this is an urgent problem that needs to be solved. And she's being told we can't solve it. She has to, and she's made a finding that there's tens of thousands of constitutional violations that result from this situation. And she's being told in a preliminary injunction context that we can't fix this on our own. And so she's left with the question, what relief do I order? And so a lot of the attacks by appellants in this appeal are on the scope of the relief. They're upset that she ordered certain things to happen if, for example, those findings and hearings weren't made that they have to release people. And they argue, well, that's actually a habeas issue. You can't order people being released. You're taking away our discretion. But that's really a question about the scope of the injunction. Prizer and all of those cases are really about the cause of action. It's a threshold question. The question in those cases is, is the constitutional theory necessarily resulting in release, which is a separate question from the relief of the court orders. No, they're already attacking that, too. But they're going to attack both, which I think is fair. Let me ask you, because there's a lot of focus on this 24 hours, and the 24 hours comes from the state law about probable cause hearings. Where is there a case that says the U.S. Constitution requires release on unsecured bond in 24 hours, if you haven't met, you know, whatever, ABCD? So it comes both, just to clarify, it comes both from the Texas state law and their own local rules, which require the bail hearings to happen with the 24-hour probable cause hearing. So in that context, I think the legal doctrinal analysis is clear. It's an application of the Matthews v. Eldridge test. The question is, what procedures and at what time is necessary to minimize unnecessary wealth-based pretrial incarceration? And Judge Rosenthal made detailed factual findings. I think it's very telling that appellants don't even cite, let alone apply, Matthews v. Eldridge in any of their briefs. And the reason for that is that anyone walking through that test would reach the same conclusion that Judge Rosenthal reached. First, on the costs to the government issue, the costs to the government are minimal. While they're already required by state law to have these hearings within 24 hours, they could make the findings that they are required to make. They could do the inquiries. They could ask about ability to pay. They're just not doing it. The cost to the government is very minimal. That's echoed by the testimony of the Harris County Sheriff and the DA and all of the defendants who said, we can do this process even faster. The administrative burden Judge Rosenthal found is very low. That's counterbalanced in the Matthews analysis by the discrete factual findings that she made about the harms that exist beyond 24 hours. I'm asking a very specific question that you're not answering, which is where in the United States Constitution and cases they're under does it say you're entitled to unsecured bond within 24 hours if you can't pay absent, you know, extraordinary la-di-da that we don't have here? I think the answer is that the U.S. Constitution doesn't require any particular form of immediate pretrial release. Harris County could, like the 75 largest cities in Alabama, they could offer everyone unsecured release right away. But they've made the decision that they're going to have a secured bail schedule. Having made that decision, the Constitution, Bearden, Turner, Williams, Tate, all the wealth-based detention cases, and Salerno, which talks about the fundamental right to pretrial liberty, having made the decision to detain people based on their wealth for an initial period, Judge Rosenthal I think very reasonably concluded those cases require the Court to scrutinize and to at least minimize any unnecessary wealth-based detention. Why not 48 hours? I'm focusing on the 24, and you're just focusing on the concept, which I understand the concept. But I'm saying why not 48 hours or 72 or even 96? Where is the magic of 24 hours other than the need under Texas law to find probable cause, which you're not challenging that they're finding that probable cause in the 24 hours. So where does the then need to do this unsecured bond and all that within the 24 hours come from in the Constitution? I think the answer to the Court's question is in the application of the Beard and Tate-Williams-Fraser line of cases. Those cases actually require, when you're depriving someone of a fundamental liberty, it requires a tailoring analysis. And Judge Rosenthal did that. She took all of the overwhelming evidence about the minimal burden to the government, the extraordinary harm to people. I mean, 55 people died while being held on bail. They couldn't afford them in Harris County Jail in the six years before our lawsuit. The tens of thousands of constitutional violations, the discrete testimony based on hundreds of thousands of cases in Harris County that after 24 hours in jail, people are actually more likely to commit crimes in the future because they lose their jobs, they lose their medical care. She weighed all of those things. So I think the answer to your question, it's not like the Constitution says 48 hours when the Supreme Court ruled in Riverside that you have to have a probable cause finding under the Fourth Amendment 48 hours. The Constitution didn't say 48 hours. What the Constitution does provide is some basic principles. And the principle that we think applies here is if you're going to be detaining someone solely based on their wealth, you have to do a good job as a government of minimizing that to whatever extent possible. And what eight days of testimony and evidence were geared at in the district court was asking that question, in this situation, under these conditions, in Harris County, what is a reasonable amount of time given the analysis of the costs and benefits? What penalties are there for lying in this affidavit? I mean, what would happen if somebody comes in and goes, oh, no, I can't afford bail, you know, and it turns out they're, you know, millionaires or whatever, just something ridiculous. What is the, what happens? I think it's this, I mean, our legal system relies to a great extent on the oath in trials, witnesses, and already Texas courts rely every single day on people's representations under oath that they can't afford a lawyer. It's the same thing. It could easily, and the district attorney, one of the reasons the district attorney supported this is the district attorney's office could later in a case go back and look at the affidavit, and if it turns out the person was wrong or lied about their assets, they can be prosecuted for perjury. It's a very serious crime. What about a less obvious thing? Somebody, you know, there's this issue of whether they could afford the bail bond versus the $5,000 or whatever, and the bail bond might not be that high if the secured bond is $1,000. It might be $100. $100 could be a lot to a person. I understand that. But if that person is not very wealthy, but they're spending money on all kinds of ridiculous things, and that's why they don't have any money, is that part of the balancing at all? Do we just take the person's word for it, but the person is out squandering money on all kinds of silly things, and that's why they don't have money? Do you see what I'm saying? It seems like we're taking the person's word for it, not just versus a millionaire, but versus how they're prioritizing what money they do have. That's a very fair question. I think that gets to your earlier question, Judge Haynes, about what are we dealing with here? We're dealing with a particular injunction by a particular district court judge in particular circumstances. In an ideal world, the state court judge would be taking that into account, would hear evidence on the question of, well, did you buy a pack of cigarettes with that money, or have you been spending all your money on drugs? The state trial court judge could make a decision about whether, like in Bearden, whether the person was willfully refusing to pay or had a good faith basis. But what Judge Rosenthal found is that they're never even asking the questions about ability to pay. They're never taking any evidence on it. They're not giving a person an opportunity to be heard. Faced with those overwhelming systemic customs and practices such that every single person who received a money bail order that they couldn't afford in Harris County was being de facto detained without any of the legal findings or process that's required. Faced with that, Judge Rosenthal issued an injunction which has a certain scope. Now, they complain about the scope of the injunction. So they say, for example, that you're not allowed to order release in 1983 cases. We know that's not true, right? The Supreme Court in Brown v. Plata, the decades of, including the seminal prisoner release case, Duran v. Elrod in the Seventh Circuit in the early 80s, which actually talks about this issue. It's just not the case that under a district court's equitable discretion, it can't order people to be released if it finds systemic constitutional violations in 1983. Brown v. Plata was a 1983 case. The Supreme Court in that case never mentioned that the case should have been dismissed because it wasn't a habeas case. So we're going to go back to that. Kennedy. But what makes this case a Fourteenth Amendment due process equal protection case as opposed to an Eighth Amendment of the Constitution excessive bail? Why is it under the Eighth Amendment that prohibits excessive bail and more of a Fourteenth Amendment due process equal protection type of claim? There are two reasons that I think it's not solely an Eighth Amendment case. The first, and both are sort of located in binding precedent. First, the en banc decision of this Court in Rainwater held, citing Beard and Tate-Williams, the sort of seminal line of cases about equal protection in due process, it held that jailing the indigent prior to trial without a consideration of alternatives violates the Fourteenth Amendment, equal protection in due process. The same reasons that you're not allowed to do that to someone post-conviction apply to presumptively innocent people as well. The second reason, Judge Prado, is Salerno itself. Salerno has two sections in the opinion. One of them is ignored by appellants, but in that section, it analyzes the deprivation of pre-trial liberty under substantive due process. It says you have a substantive due process right, a fundamental right to pre-trial liberty. Now, it's also said somehow that these are new arguments. We have raised that argument in the complaint, in the briefing on the preliminary injunction, in the motion to dismiss briefing, at oral argument in the motion to dismiss, in opening argument, in closing argument, in our proposed conclusions of law. I'd be happy to submit a letter to the Court with the dozens of citations where we raised both the broader and the narrower theories and the argument that there's a substantive right to fundamental pre-trial liberty. It's just manifestly incorrect that this is somehow a new argument on appeal. And in fact, Judge Rosenthal herself accepted this argument. She said, whatever else you think about standards of scrutiny and wealth-based detention and Frazier and Bearden and Tate and Williams, whatever you think about those cases, if you issue an order as a judge, a bail order, an order of release, which is what a bail order is supposed to be, that operates to detain a person because they can't pay, what you've done is the functional equivalent of an order of pre-trial detention. That may be okay, but what you have to do in that situation is make a certain finding that there's no other condition or combination of conditions that could reasonably meet the government's interests, and you have to afford the person an opportunity to be heard and to present evidence and to make argument about it. Those are simple due process requirements. And Judge Rosenthal found that they weren't happening. And so she was left with the situation, how do I remedy that situation where these violations are occurring and they claim to me that they're not able to do them? So that's where we get to the timing question. So I think it's unassailable as a matter of law that, and in fact, the First Circuit, the D.C. Circuit, we cite these cases in our briefs, Leathers from the D.C. Circuit, Manta-Conzaes from the First Circuit, the State v. Brown, New Mexico Supreme Court, Brangen, the Massachusetts Supreme Court that we just cited to the Court. Every court that has ever heard this question has concluded that an order of release that operates as an order of detention might be okay, but it has to meet the findings and procedural requirements of an order of detention. Otherwise, you have to take the position that appellants end up taking in their brief. I don't know if the Court understood the implications of appellants' argument in their reply brief, but essentially they're arguing there is no constitutional liberty interest in pretrial liberty. All the — when they cite Gerstein in their reply brief on page 18, they're saying the only finding that has to be made is a probable cause finding in order to detain someone prior to trial. That's just contrary to Salerno. It's contrary to every court that's ever ruled on the question of what findings and procedures are required for an order of pretrial detention. Now, I understand the Court's question about timing. How do we draw the line? Is it 24 hours or 48 hours? We submit that Judge Rosenthal, based on the evidence that she found, didn't abuse her discretion in this preliminary injunction posture of weighing and determining that in Harris County, based on the benefits and burdens to the government, they could and should, and in fact, are already required to do it under 24 hours. So how's it going? There's no evidence in the appellate record about how it's going, certainly. And we had a hearing in front of Judge Rosenthal earlier this week with some discovery disputes about how to obtain data so that we could actually look to see how it's going. But so we don't know anything in the record about how it's going. And that's really not... The order it's being appealed from is a preliminary injunction order. There's a record from which this Court could decide it. And so that's... Again, in any case where there's a preliminary injunction issued, facts on the ground might change while the case is on appeal, but that's not the question that this Court is being asked to resolve. I mean, the thing about it is I think everybody would agree the federal courts, whatever their permitted role, ought to take a very careful look at getting in the middle of state court procedures. And so if there's no longer a need for the federal court, one could argue we ought to get out of the way. Let me make two points on that point. First, I could stand up here and speculate, as opposing counsel did, about what's actually going on on the ground right now. I've heard reports that the relief being ordered is going very well, partially because, you know, we represent people that are being released and their constitutional rights aren't being violated anymore. The county may have a different perspective. So, yes, I mean, you could remand for new factual findings, but that would sort of defeat the purpose of preliminary injunctions, I would submit. The second point I want to... But that relates back to the question of whether we should have stayed her order. I mean, I was on that panel about whether to stay or not the preliminary injunction. And this Court has already made a determination on that question, right? So... But the second point I would offer is, Judge Roosevelt made factual findings that are relevant to your question. And so, for example, on this federal court interference question, Judge Goodhart, one of the defendants, testified at page 8462 of the record that whenever a habeas petition is raised in misdemeanors, which, as she said, almost never happens, it takes 7 to 10 days for that petition to even be docketed. So imagine someone gets a lawyer three or four days after they're arrested. Then they, I guess, presumably could file a habeas petition another 7 or 10 days. Keep in mind, Judge Roosevelt found, as a matter of fact, that 84% of people who are detained because they can't afford money bail plead guilty in Harris County, and they do so in a median of 3.2 days. So these cases are being churned out. There's no way someone, when they're brought to court after two days or three days or four days, and they decide to plead guilty, there's no way they could ever raise that abuse. Can I ask, should we treat, like, assaults and other class-A misdemeanors differently than some of the more, you know, loitering in a public area kind of misdemeanors? Judge Rosenthal, I think, and this is one of the areas where the injunction exercised enormous restraint, that Judge Rosenthal, nothing about Judge Rosenthal's legal finding would prohibit Harris County from treating those people differently. They could even detain people if they wanted to. Tomorrow could pass a new rule saying anyone charged with assault should be detained without bond until a hearing before a judge, where the judge can look at the person, issue non-financial conditions like a GPS condition or a stay-away order, curfew, things like that. So there's nothing... Judge Rosenthal's order was directed at the wealth-based aspect of it. Harris County, for assault cases, has already decided that it'll release anyone charged with an assault if they pay $50 to a bondsman or $100 to a bondsman, whatever the 10% of the amount would be. So her order leaves all of that in place in Texas or Harris County could legislate non-wealth-based ways of treating people charged with assault. One of the... That's the public safety factor that's already being considered. Exactly. Harris County has already made policy judgments about public safety in those cases, and that's why some of the overheated rhetoric in this appeal about the danger to public safety rings so hollow. They would already release all of those people. They don't need to do that. Other jurisdictions like Washington, D.C., or the Federal system, if you're charged with a serious offense like that, they detain you without bond until a judicial officer can see you. I apologize. I've stepped over my time. Thank you very much. We ask that the Court refer you. Mr. Volchak. I'll be quick. May it please the Court, Daniel Volchak for the Plaintiffs. I want to address the arguments the County has raised, but Judge Haynes, if I can just build briefly on the answer you heard about the 24-hour provision. I think the question before the Court is whether the District Court abused its broad remedial discretion in fashioning a remedy for the constitutional violations that it found. As we say, pages 83 to 84 of our brief, under Supreme Court precedent, this Court's precedent, and I don't actually take the appellants to be disputing this, the scope of a District Court's remedial authority does not have to map on exactly to the scope of the constitutional violations that it found. So the question is, was that particular provision an abuse of discretion? For all the reasons we've briefed and you heard, I submit the answer is no. Turning to the Attorney General. Before you get further, the question that Judge Haynes had is, part of the complaint was that there's no discretion. Everybody's treated like, boom, boom, boom, go to jail, no bond, and the judges are not looking at each case individually and assessing whether there's a right to bail or whether they can afford bail, but now under the injunction, it's like within 24 hours, if you don't have your hearing, you're released. That doesn't give the judges any discretion, so as she was asking, it seems like it's gone the other way now. The judges still don't have any discretion to make a determination if within 24 hours, they're not able, for some reason, to have a hearing. The injunction says they're released. So, don't we now have, have we now gone too far to the other side and there's still no discretion given to the judges under the first, what we had was everybody gets locked up and now we have a system where everybody gets released and in neither system do you have a judge individually looking at each case and making an individual decision. Judge Prado, we have not gone too far in the other direction and here is why the appellants conceded below that they could not comply with the constitutional requirements. They could not provide the individualized hearings. If they now believe that they can, well, and so Judge Rosenthal, Chief Judge Rosenthal acted on that concession and the question is, was it abuse of her discretion to do so? If they now believe that they can, if they have a different position, as Mr. Karakatsanis was saying, this is coming up on interlocutory review, the case is going back, they will have an opportunity to say circumstances have changed. Of course, a party can always go back to a court that issued an injunction and asked for a modification of the injunction and an order granting or denying a modification is again subject to interlocutory appeal. The question is, in light of the concessions that were made on this record, did the district court abuse her discretion in fashioning the remedy that she did? The answer is clearly no. I would like to briefly get to the arguments that the county makes. The district court correctly concluded that Harris County can be enjoined here under Monell on two independent grounds, namely that first, the sheriff and second, the county judges are each county policymakers. I have to tell you, I am very disturbed by the idea that the sheriff needs to say to a judge, I'm not going to follow your order. That just strikes me as chaotic. I appreciate that everybody has a duty to follow the Constitution, but there is a system here. If we issued an order in this case that you thought violated the Constitution, you would not be free to disregard it just because you thought that. That's why we have a process. And so I'm shocked by the idea that the sheriff has to ignore a judge's order if he, the sheriff, has a different view of the Constitution than a duly elected judge. Well, let me try to give you some comfort, Judge Haynes, but before I do that, there are three independent arguments we have in response to the county's argument that Texas law does not give the sheriff the authority to cure the constitutional violations. You spoke to one of them and I want to address it in a minute, but I do want to lay out the other two because they're each independent grounds for rejecting this argument. And the other two, in fact, are ways that the county agrees in its brief in this Court the sheriff can cure the violations. So number one, under Texas Code of Criminal Procedure, Article 14.06c, the sheriff can immediately release, without any bail, any Harris County resident arrested for a number of enumerated in 14.06c Class A or B misdemeanor violations. And if the sheriff did that, as to any misdemeanor arrestee who is otherwise eligible for release, so no warrants, no immigration hold, nothing like that, but who could not afford to pay secured bail in the amount listed in the preset bail schedule, that would cure the constitutional violations. And the county agrees on pages 28 to 29 of its opening brief, the sheriff has that power. Number two, under Texas Code of Criminal Procedure, Article 17.15 and 17.20, the sheriff can, instead of bringing a misdemeanor arrestee before a magistrate, can set secured bail himself of one penny. The county agrees on page 27 of its reply brief, the sheriff has that power under Texas law. And again, if the sheriff did that, that would cure the constitutional violations. So you don't even need to get to the question you were asking, Judge Haynes, but let me go to it. What's unusual here are two things. Number one, Texas law, as interpreted repeatedly by this Court in Duhigg v. Jones, Soto v. Ortiz, other cases we cite in our brief, Texas law gives the sheriff an independent obligation to assure himself that anyone under his custody is lawfully detained. And why I don't think it's so shocking, Judge Haynes, is what the Texas legislature is doing here is saying, we're talking about pretrial detention. Things don't get much more fundamental than that. And people are human, judges make mistakes occasionally, and if we're in that situation, we're talking about somebody's liberty, we want a second check. We want a second official elected by the same voters that elect the county judges to make sure, bring his or her own independent judgment to bear. And Judge Haynes, so I certainly could not disregard any order of this Court, I don't have that authority under Texas law. The Texas legislature has given it to the Texas judges and it only applies in very narrow circumstances where there is not even a good faith belief that the detainee is the subject of a lawful detention order. And there is no challenge in this Court to the district court's factual finding that that good faith belief was not held by the county judges or the county sheriff here as to those who were the subject of wealth-based detention orders. In fact, the sheriff testified that he knows such detention is unconstitutional. And that's not surprising because remember what these orders essentially say. If the state law wants to create chaos in their own system, that's fine, but why are we required to do that under the U.S. Constitution? Because it seems to me to be chaotic to say that a sheriff can ignore a court order. Someone has to be the arbiter between two people who disagree. Can I disagree on something that has to be a third person or one of those two has to be primary? And it seems like the judge to me who is the law-trained person, et cetera, is the better person to make the decision of what's constitutional or not. So I submit the Texas legislature has made a different judgment that this Court should respect for purposes of Monell. Again, you don't even need to get there if you agree with either one of the other two arguments that I laid out. I do want to turn to one other argument that the county makes about the sheriff, which is that he cannot be enjoined because doing so would circumvent the amendments to 1983 that prohibit judicial injunctions generally against judicial officers. Well, the sheriff is not a judicial officer, and the county's argument that that prohibition extends to those who implement or enforce judicial orders would blow a massive hole in the protections offered by Section 1983. Not surprisingly, the county offers no authority, no case in which that argument has been accepted. In fact, no argument, to our knowledge, in which it has even been made. The last thing I want to say, Your Honors, is that this argument that I just discussed is the only one the county raises that would have any significant effect on the injunction. Even if everything else they argued were valid, the injunction would largely stand unaffected because none of it goes to, and there is no other argument regarding the district court's alternative holding, that the sheriff, who is the subject of the injunction, can be enjoined as a state actor under Ex Parte Young. Indeed, that is most of what they are arguing, that he is a state official. So irrespective of what they say, setting aside the one argument I just discussed, the injunction against Harris County stands and will ask the Court to affirm. Thank you. Mr. Cooper. Thank you very much, Your Honor. A few very brief points here. First of all, I want to come back to the rubber stamp point. Every single one of the hearing officers and the county judges at the time this case was litigated put in sworn declarations to the effect that they do not rubber stamp. They do an individualized consideration of all the factors governing this under state law, including ability to pay, that they consider whether or not unsecured bond is appropriate in every case. And counsel suggested that the hearing officers don't even inquire into financial information of each individual. Again, the pretrial services report. This is plaintiff O'Donnell's pretrial services report. It's got information in it, Judge Prado, going to every one of the factors that individualized consideration would entail. Second, counsel suggests that the ‑‑ there's a farm that's filled out, you check, do you own a car, no, do you have a house, do you marry, whatever, and then you go by that farm and whatever comes out, that's the determination as to whether there's bail or not. They're called hearing officers. And this hearing is ‑‑ You can't speak. It's certainly true that oftentimes the effort by one of the defendants to speak is interrupted by a hearing officer out of concern that he will incriminate himself. The hearing officers who were accused of that made clear that oftentimes they have witnessed individual defendants incriminate themselves by speaking. What is a hearing if you're not going to listen? What are you hearing as a judge if no one is talking? Your Honor, they can look at a number of them. You will see that  consideration is given. The hearing officers go through this information. It's gathered in order that individualized considerations can be given. That's its only purpose. Counsel said the next business hearing is a sham. Defendants are not permitted into the courtroom. Your Honor, here's what the record says. The question was asked to the witness. Would your client typically be brought into the courtroom if they were not pleading guilty? Typically no, but yes sometimes. If there's particular business that the court or the defendant or the prosecutor needs to take up before the court, then the defendant or client is brought out into the courtroom. If there's no particular reason, then not. And it goes on to say if the issue is bail, then they're brought into the  So, and even more importantly, Your Honor, Judge Prado, that hearing is counseled. The lawyer for the defendant is in the courtroom and can make any challenge and offer any argumentation with respect to the bail. The lawyer is in the    challenge with respect to the bail. The lawyer is in the courtroom and can offer any argumentation with respect to the bail. The lawyer is in the courtroom and can make any challenge with respect to the bail. Is the client there? Might not be there. That's right, Your Honor. So how do you communicate with your client if you're at a hearing representing your client and your client isn't even there? Your Honor, the lawyer and the lawyer are     don't think     there. They are not there. So I don't think they're there. I don't think they're there. And            don't think they're there. I don't think they're there. They are not there. So I don't think that the hearing should take place before that. And in fact the reason 48 hours was selected is that bail is to allow time to be taken up with it. And